UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CRIMINAL ACTION NO. 4:12CR-28-JHM

UNITED STATES OF AMERICA                                        PLAINTIFF

VS.

MEIESHA SHARP                                                   DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Suppress Evidence [DN 45]. Fully briefed, this matter is ripe for decision.

I. BACKGROUND

This case arises out of the arrest of Ms. Meiesha Sharp on June 29, 2012 by the Henderson County Police Department for the robbery of Fifth Third Bank located at 1555 South Green Street, Henderson, Kentucky. Shortly after apprehending Ms. Sharp, police officers took Ms. Sharp to the Henderson Police Department in order to question her about the robbery. While at the Henderson Police Department, police officers from the Henderson Police Department, the Henderson County Sheriff's Office, and the Federal Bureau of Investigation interrogated Ms. Sharp concerning not only the robbery of Fifth Third Bank but also the robbery of Hayes Oil located at 3671 U.S. Highway 41A, Henderson, Kentucky and the Kangaroo Express located at 1308 Atkinson Street, Henderson, Kentucky.

Detective Alto Lee with the Henderson Police Department and Detective John Book with the Henderson County Sheriff's Office began the interrogation of Ms. Sharp by orally advising

her of her Miranda rights as well as obtaining two signed Miranda waivers, one produced by the Henderson Police Department and the other by the Henderson County Sheriff's Office. After advising Ms. Sharp of her rights, Detectives Lee and Book questioned Ms. Sharp about the robbery at Fifth Third Bank. Ms. Sharp confessed to robbing the Fifth Third Bank as well as brandishing a gun during the robbery of the bank.

Following questions concerning the robbery of Fifth Third Bank, Detectives Lee and Book started to inquire whether Ms. Sharp had committed any other similar robberies in the Henderson. Ms. Sharp responded by stating that she had never been involved in a robbery prior to the one at Fifth Third. [June 29, 2012 Tr., Gov't Ex. 6, at 20]. Detective Book then suggested that there might be a video and DNA from a previous robbery that implicated her. Again, Ms. Sharp stated, "It's my first time ever doing anything like this." Id. at 21. After this denial of involvement in anther robbery, the questioning continued as follows:

> DET BOOK: Okay, I want you to think real hard, okay, about some other, about another incident.
>
> M SHARP: Mmm hmm.
>
> DET BOOK: Alright. Whether you did this one, or whether there's been 4, 5, 10, 3, you know, since you've been here that you've done, okay, it's not going to compound anything. They're not going to run sentences after sentences after sentences, on you, okay? What's going to hurt you is if we have to wait and for DNA and for processing to come back on some of these other places, okay?
> . . .
>
> DET BOOK: Okay. But what, what I'm trying to explain and what, what Alto was saying is whether you've done one or 5, it's all the same right now.
> . . .
>
> M SHARP: A business. I swear to you, I've never committed any crime before, this is my first time ever. My first time ever doing anything like this.
>
> DET BOOK: Meiesha, on the video, you're wearing the same clothing, you've got the same gun, the same speech . . .

> DET LEE: Soft.
>
> DET BOOK: Big brown eyes. Okay?
>
> DET LEE: Listen . . .
>
> DET BOOK: Let's get it taken care of right now.
>
> DET LEE: Nobody's trying to pin anything on you, Meiesha, what we're trying to do is make you understand that you need to get everything taken care at once.

Id. at 22-23. Ms. Sharp then confessed to robbing Hayes Oil without further prompting by either detective. Similar to Ms. Sharp's confession concerning Fifth Third Bank, she told the detectives about how she robbed Hayes Oil.

After discussing the robbery of Hayes Oil, Detectives Lee and Book left the room for about five minutes. Detective Lee returned with Detective Preston Herndon from the Henderson Police Department in order to ask Ms. Sharp about the robbery at the Kangaroo Express. After describing the location of the Kangaroo Express, the following dialogue occurred:

> DET HERNDON: Meiesha, do you understand what consecutive and concurrent means?
>
> M SHARP: Mmm mm.
>
> DET HERNDON: Okay. As a general rule, it doesn't matter how many crimes you've committed, they run the sentences concurrently.
>
> M SHARP: What does that mean?
>
> DET HERNDON: You run all your time at the same time.
>
> M SHARP: Mmm hmm.
>
> DET HERNDON: You see what I'm saying?
>
> M SHARP: So whether you did one –
>
> DET LEE: Or 50-

DET HERNDON: Or 50-

M SHARP: Mmm hmm.

DET HERNDON: You're not going to do one extra day. Okay? That's just the—that's just the way the system works, okay? So, the problem is if there is something else that you did, you understand what I'm saying?

M SHARP: Mmm hmm.

DET HERNDON: And you don't tell me about it, or you don't tell him about it or you don't talk to us about it . . .

M SHARP: Mmm hmm.

DET HERNDON: And then we find out later that you did do it . . .

M SHARP: If you got a video, let me see the video.

DET HERNDON: If we find . . .

DET LEE: We have it.

DET HERNDON: Hang on, just hear me out, okay? If we find out that, you know, we have DNA, we have finger prints, there's statements of people who can put you there if we end up charging you with it and we find that separately by the time that catches up you may have to run your case consecutively as opposed to concurrently, okay?

M SHARP: Mmm hmm.

DET HERNDON: Concurrent means you're doing time on a bank robbery, okay?

M SHARP: Mmm hmm.

DET HERNDON: Then you do time on the robbery at Hayes Oil, . . .

M SHARP: Mmm hmm.

DET HERNDON: And you do time on, you know, something else, you know, everything else that you've done you do it all at the same time. Consecutively means you finish serving your time on the bank robbery, then you start serving your time on Hayes Oil, which is probably not going to happen, my understanding is you talked about that, is that correct, Meiesha?

M SHARP: Yeah.

4

>DET HERNDON: Okay. But then, the Kangaroo or the Pantry down there, if you're involved in that, do you understand consecutive now versus concurrent?
>
>M SHARP: Mmm hmm.
>
>DET HERNDON: Hmm?
>
>M SHARP: Mmm hmm.
>
>DET HERNDON: So hun, there's absolutely no reason for you to sit in here if you were involved in this and not tell me about it.

Id. at 34-35. Ms. Sharp then asked to see the video again and the detectives insisted that they had a video and that it showed her robbing the Kangaroo Express. Ms. Sharp then confessed to robbing Kangaroo Express and provided all the details of the robbery.

The United States initially indicted Ms. Sharp for violation of 18 U.S.C. § 2113(a) for the robbery of Fifth Third Bank and for violation 18 U.S.C. § 924(c)(1)(A) for carrying and brandishing a firearm during the robbery of Fifth Third Bank. In two subsequent superseding indictments, the United States added four additional counts for the robberies of Hayes Oil and Kangaroo Express in violation of 18 U.S.C. § 1951(a) and for carrying and brandishing a firearm during those robberies in violation of 18 U.S.C. § 924(c)(1)(A). Defendant moves to suppress her statements about the robberies of Hayes Oil and Kangaroo Express made on June 29, 2012.

### III. DISCUSSION

**A. Miranda**

Defendant argues that the police failed to inform her of her Miranda rights again after taking a break following questioning about the Fifth Third Bank robbery.[1] In response, the United States argues that the breaks taken between questioning on the robberies lasted less than

---

[1] The Defendant refers to a break taken after questioning about Fifth Third Bank; however, the video of the interrogation shows that there was no break taken between questioning about Fifth Third and questioning about Hayes Oil. Instead, the break occurred in between questioning about Hayes Oil and Kangaroo Express.

thirty minutes, and as such, the police did not have to re-Mirandize her. Defendant does not question the validity of the initial Miranda waivers that she signed prior to questioning about the Fifth Third robbery.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The United States may not, therefore, use statements stemming from a custodial interrogation without first demonstrating the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). However, the obligation to administer a Miranda warning to a person only arises when an individual is in custody. "For an individual to be 'in custody,' there must be 'a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" United States v. Mahan, 190 F.3d 416, 421 (6th Cir. 1999) (citing Thompson v. Keohane, 516 U.S. 99, 102 (1995)). See also United States v. Swanson, 341 F.3d 524, 528 (6th Cir. 2003). Additionally, under Miranda, the Supreme Court "specifically forbade the introduction of statements obtained from an accused after custodial interrogation unless he had previously been given specific warnings. Miranda defined custodial interrogation as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Stanley v. Wainwright, 604 F.2d 379, 382 (5th Cir. 1979), cert. denied, 447 U.S. 925 (1980) (quoting Miranda, 384 U.S. at 444).

> Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Rhode Island v. Innis, 446 U.S. 291, 301-302 (1980).

In this specific case, Defendant's main Miranda argument focuses on the break taken during the interrogation. However, a break in an interrogation does not necessarily require police to re-Mirandize a suspect. Wyrick v. Fields, 459 U.S. 42, 43–49, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). "[A]dditional warnings are only required if the circumstances seriously changed between the initial warnings and the interrogation." Treesh v. Bagley, 612 F.3d 424, 432 (6th Cir. 2010) (citing Fields, 459 U.S. at 47, 103 S.ct. 394). In making this determination, "[t]he courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." United States v. Weekley, 130 F.3d 747, 751 (6th Cir. 1997) (quoting United States v. Andaverde, 64 F.3d 1305, 1312 (9th Cir. 1995)). Instead, the court applies a totality of the circumstances test when determining whether a delay between a Miranda warning and a subsequent interrogation necessitated that a defendant be re-advised of her rights by the interrogating officers. United States v. Morris, 2013 WL 3867836, *3 (S.D. Ohio July 25, 2013) (citing Treesh, 612 F.3d at 431). Under this test, courts ask two important questions:

> (1) whether the defendant knew and understood his rights at the time the Miranda warning was given by interrogators and (2) whether anything happened in the time between when the defendant received the warning and the challenged statements that 'rendered Defendant unable to fully consider the effect of an exercise or waiver of those rights before speaking with police.'

Id. (quoting United States v. Jones, 147 F.Supp.2d 752, 761 (E.D. Mich. 2001)).

In this case, the police not only orally advised Defendant of her rights prior to questioning her but also provided two written copies of those rights as provided on the waiver forms. Henderson Police Department's form required that she sign the bottom of the waiver and Henderson County Sheriff's Office required that she initial two sections and sign at the bottom. Considering the fact that Defendant had been given her Miranda rights multiple times, there is no reason to doubt that she knew and understood those rights. Although a break occurred between

7

questioning about Hayes Oil and Kangaroo Express, this amounted to less than ten minutes and nothing happened during that time to suggest that Defendant would need to be re-Mirandized. Therefore, the statements regarding Hayes Oil and Kangaroo Express are not suppressed based on Miranda.

### B. Coerced Confession

Defendant contends that the police coerced her confession regarding the robberies of Hayes Oil and Kangaroo Express. Specifically, Defendant focuses on the discussion of consecutive and concurrent sentencing during both of those interrogations. She believes that the police falsely promised that she would receive concurrent sentences for those subsequent robberies and she confessed because of that promise.

In order for a confession to be admissible, it "must be free and voluntary; that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." United States v. Bishop, 149 F.3d 1185, 1998 WL 385898, *3 (6th Cir. July 1, 1998) (internal quotations omitted). When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary. The Court must determine whether the confession was voluntary considering the "totality of the circumstances." See Arizona v. Fulminante, 499 U.S. 279, 286 (1991). The Sixth Circuit has established three requirements for a finding that a confession was involuntary due to police coercion: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." Mahan, 190 F.3d at 422. Under the totality of circumstances analysis, a court should also consider relevant factors,

including "the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and extent of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." Id. at 423 (citing Ledbetter v. Edwards, 35 F.3d 1062, 1067 (6th Cir.1994)).

Defendant contends that the police promised in both the interrogation concerning the Hayes Oil robbery and the Kangaroo Express robbery that she would be sentenced concurrently with the robbery of Fifth Third Bank. Based on the transcript of the interrogation on June 29, 2012, the Court finds substantial corroboration in the record that the police promised just prior to Ms. Sharp's confession in each instance that she would be sentenced concurrently with the Fifth Third robbery. As to the interrogation concerning Hayes Oil, Detective Book informed Defendant that it did not matter how many crimes that she confessed to at that point because the Government was "not going to run sentences after sentences after sentences" on her. [June 29, 2012 Tr., Gov't Ex. 6, at 22]. Detective Book reiterated this point before informing her that the police had a video of her committing the Hayes Oil robbery. The interrogation concerning Kangaroo Express followed almost the exact same pattern. In fact, Detective Herndon not only explained the difference between consecutive and concurrent sentencing but also specifically stated, "As a general rule, it doesn't matter how many crimes you've committed, they run the sentences concurrently." Id. at 34. Detective Herndon then continued to explain that if she did not confess at that time and the police found more evidence to charge her with the robbery of Kangaroo Express, then "by the time that catches up you may have to run your case consecutively as opposed to concurrently." Id. at 35. Again, the conversation turned to a brief discussion about the existence of a video, and then Ms. Sharp confessed to robbing the Kangaroo Express.

"In general, police promises of leniency and threats of prosecution may be coercive if they are 'broken or illusory.'" United States v. Siler, 526 Fed. Appx. 573, 575 (6th Cir. 2013) (quoting United States v. Johnson, 351 F.3d 254, 262 (6th Cir. 2003)). Additionally, "a promise is problematic if a police officer leads a defendant to believe that he 'will receive lenient treatment when this is quite unlikely,' and makes a promise, without authorization by the prosecution." Id. (quoting United States v. Little, 9 F.3d 110 (6th Cir.1993)). In a recent decision from the Sixth Circuit, the court found that promises made by the police "went too far" as to make them overly coercive. Id. at 576. Specifically, the court focused on two specific statements made by an investigator from the Knoxville Police Department. First, the investigator indicated that the police would not charge anyone if the defendant revealed information about a gun stolen in a burglary that the police suspected the defendant to have committed. Id. at 576. Second, the investigator stated that he "was the one who wrote the warrants, indicating that [he] influenced which cases the prosecutors would pursue and whom the police would arrest." Id. The Sixth Circuit held that "[t]hese explicit statements were *legally inaccurate*—there is no evidence in the record that would establish [that the investigator] had authorization to bind either the District Attorney or federal prosecutors." Id. (emphasis added).

In the present case, Detectives Book's and Herndon's statements concerning concurrent sentencing were legally inaccurate. As in the case of Siler, there is no evidence that the police discussed with federal prosecutors the charges that would result from a confession for these other robberies. If the police had discussed the other charges with a federal prosecutor, they would have been told that a conviction under 18 U.S.C. § 924(c)(1)(A) for use of a firearm in a crime of violence or drug trafficking requires consecutive sentencing. 18 U.S.C. § 924(c)(1)(D)(ii) ("no term of imprisonment imposed on a person under this subsection shall run concurrently with any

other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried, or possessed."). The transcript of the interrogation clearly indicates that at the time of questioning that both Detectives Book and Herndon were aware that a gun was used at the time of the Hayes Oil robbery as well as the Kangaroo Express robbery. Additionally, the Court rejects the United States' suggestion that the detectives' lack of knowledge of federal law made their statements less coercive.[2] In this instance, the detectives made sweeping statements concerning sentencing and never once mentioned that they were only talking about sentencing practices in state court.

The United States seeks to distinguish the facts of the present case from those found in Siler. Specifically, the United States argues that "[t]he facts of [Siler], when viewed in aggregate, unequivocally show that the suspect and the interrogating officer were engaged in a bilateral negotiation as a result of which the suspect came to rely on the officer's false promise." [United States' Post-Hearing Brief, DN 57, at 4]. Of course, as the United States admits, an analysis of the negotiation between the suspect and the investigator is really one based on the third factor of the Mahan test. While the Sixth Circuit briefly mentioned the second and third Mahan factor, the court explicitly stated, "We believe the first Mahan factor is determinative in this case . . . ." Siler, 526 Fed. Appx. at 575. In the present case, the first Mahan factor is determinative in the Court's decision. Notwithstanding this fact, the Court finds a factual basis to support the conclusion that "the coercion in question was sufficient to overbear the defendant's will" and "the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." First, Ms. Sharp repeatedly denied involvement in additional robberies during questioning about both the robbery of Hayes Oil and Kangaroo Express.

---

[2] The United States made a similar argument in Siler. The investigator said it was not his intention that the case would go to a federal prosecutor, but the defendant "should not have been expected to understand that 'no one will be charged' meant only that no one would be charged in state court." Siler, 526 Fed. Appx. at 576.

Second, the temporal proximity between the discussion about sentencing and Ms. Sharp's subsequent confessions suggests that it was a "crucial motivating factor." The United States points out that Ms. Sharp only confessed after the police informed her about the existence of DNA and videos. However, the coercive statement does not necessarily have to be the *only* factor, just a "crucial motivating factor."

While police conduct during an interrogation is the most relevant part in examining a potentially coerced confession, the Court should also examine the characteristics of the accused. See Mahan, 190 F.3d at 423. During questioning about Hayes Oil, the police asked Ms. Sharp if she was familiar with the legal system and how sentencing worked. She responded in the negative and stated that she had been only been arrested for possession of marijuana previously. Ms. Sharp does not appear to be an individual familiar with the legal system as to suggest she would know how sentencing worked. Additionally, the Court takes into account Ms. Sharp's below average IQ in accessing her relative susceptibility to police coercion during the interrogation. These factors contributed to the lack of voluntariness of Ms. Sharp's confessions for the robberies of Hayes Oil and Kangaroo Express.

The United States has failed to demonstrate by a preponderance of the evidence that Ms. Sharp's confessions were not coerced. Therefore, the Court suppresses Ms. Sharp's statements as they relate to the robberies of Hayes Oil and Kangaroo Express.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence [DN 45] is **GRANTED**.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

December 9, 2013